## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## WINCHESTER DIVISION

**LARRY L. WALKER,**

       **Plaintiff,**

**v.**                             **Case No. _____**

**AMVAC CHEMICAL CORPORATION,**    **12 PERSON JURY DEMAND**

       **Defendant.**

### COMPLAINT

Plaintiff, Larry L. Walker ("Walker"), makes the following complaint against Defendant AMVAC Chemical Corporation ("AMVAC") for correction of invention under 35 U.S.C. § 256 and for breach of contract.  In support of this Complaint, Walker alleges as follows:

### PARTIES

1.    Walker is now, and at all times relevant hereto has been, a citizen and resident of Flintville, Lincoln County, Tennessee.

2.    AMVAC is now, and at all times relevant hereto has been, a corporation organized and existing under the laws of the State of California with its principal place of business located at 4695 MacArthur Court, Newport Beach, California. AMVAC is a specialty chemical manufacturer of products for agricultural, commercial and consumer uses.  AMVAC manufactures and formulates chemicals for crops, turf and ornamental plants, and human and animal health protection, including insecticides, fungicides, herbicides, molluscicides, growth regulators, and soil fumigants.

**JURISDICTION AND VENUE**

3.     Jurisdiction is proper in this Court under 28 U.S.C. § 1338 as this case involves a cause of action pursuant to 35 U.S.C. § 256 relating to patents, and United States District Courts have original and exclusive jurisdiction of claims for relief arising under Acts of Congress relating to patents.

4.     Jurisdiction is also proper in this Court under 28 U.S.C. § 1337(a) for Counts One, and Three of this Complaint, as the state law causes of action alleged in Counts One and Three are so related to Walker's claims under 35 U.S.C. § 256 that the claims constitute one cause of action.

5.     Jurisdiction is also proper in this Court under 28 U.S.C. § 1332(a) as this case involves parties who are citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

6.     Venue is proper in this Court under 28 U.S.C. § 1391(b), as a substantial part of the events or omissions giving rise to Walker's claims occurred in the Eastern District of Tennessee.

**FACTUAL ALLEGATIONS**

7.     Walker claims inventorship and an ownership interest in the patent issued to AMVAC under Patent Number 8,921,270 B2 (the "'270 Patent").

8.     From 2001 to 2009, Walker, at considerable expense and effort, developed a method for the use of triazine-based corn herbicide, specifically the triazine-based corn herbicide ametryn, to control weeds in corn crops (the "Ametryn Method")

9.     Walker patented the Ametryn Method as United States Patent Number 6,413,909.

10.     Lacking the capacity to market the Ametryn Method, Walker, while located in Flintville, Lincoln County, Tennessee, entered into negotiations with AMVAC representatives located in Newport Beach, California and Chapel Hill, North Carolina seeking assistance for the marketing of the Ametryn Method.

11.     Over the past few decades, AMVAC's growth has been driven by acquisition and licensing of both established and developmental products from third parties.

12.     Therefore, Walker determined that AMVAC would be a natural partner in the marketing of the Ametryn Method.

13.     On or about February 27, 2009, AMVAC and Walker entered into a Confidential Disclosure Agreement (the "Confidentiality Agreement").  A true, correct and complete of the Confidentiality Agreement is attached hereto and incorporated by reference herein as **Exhibit A.**

14.     In the ConfidentialityAgreement, Walker agrees to disclose confidential and otherwise trade secret information with respect to the Ametryn Method to AMVAC.  AMVAC agrees to maintain the confidentiality of the information disclosed by Walker and to use the information solely for the purpose of evaluating the feasibility of a marketing agreement with Walker.

15.     Specifically, in Paragraph 1 of the Confidentiality Agreement, AMVAC acknowledges the value of the information held by Wallace:

> [Wallace] possesses certain information, including, but not limited to, information regarding intellectual property rights, product formulation and product performance (hereinafter referred to as "INFORMATION") relating to its proprietary crop protection product (Ametryn hereinafter referred to as AMV 5065) for use in agriculture and horticulture.

Ex. A, at ¶ 1.

16.     Further, in Paragraph 1 of the Confidentiality Agreement, AMVAC acknowledges that Walker will disclose his INFORMATION to AMVAC "on an exclusive basis" solely for the purpose of enabling AMVAC to evaluate its interest in entering into a separate written agreement with Walker for the "exclusive development and marketing rights" for Walker's proprietary crop protection product.

17.     Finally, in Paragraph 1 of the Confidentiality Agreement, AMVAC agrees that the term "INFORMATION" owned by Wallace includes:

> Information supplied, either directly or indirectly to [AMVVAC] hereunder or discovered by AMVAC in connection with said evaluation pertaining to the chemical composition or properties of the AMV 5065 and/or pertaining to the use and/or formulation of AMV 5065.

Ex. A, at ¶ 1.

18.     In Paragraph 2 of the Agreement, AMVAC agrees as follows:

> [AMVAC] agrees to hold in confidence the INFORMATION disclosed to it by [Walker], as identified in Paragraph 1 above, and not to disclose the information to anyone except to such of its employees or consultants as may be necessary for the purpose of execution of this Agreement.

Ex. A, at ¶ 2.

19.     Paragraph 2 of the Agreement excepts from this confidentiality requirement INFORMATION:  (a) in the public domain prior to February 25, 2009; (b) in the public domain after February 25, 2009, not due to some unauthorized act by or omission of [AMVAC]; (c) independently developed by AMVAC prior to February 25, 2009; (d) information disclosed to AMVAC by a third party who did not acquire the information from Walker.  In addition, the confidentiality requirements do not apply if Walker grants permission to AMVAC to disclose or make use of the INFORMATION at issue.

20.     Paragraph 7 of the Confidentiality Agreement limits the term of the Confidentiality Agreement to the period of February 25, 2009 until October 1, 2009.

21.     Paragraph 7 of the Confidentiality Agreement specifies that "[AMVAC] shall not for a period of five (5) years, use any proprietary information for purposes other than for which it was disclosed." That five-year period ended on October 1, 2014.

22.     Paragraph 10 of the Confidentiality Agreement clarifies that the Confidentiality Agreement does not grant AMVAC any right or license in or to Walker's "patent rights, or any right or license to use the INFORMATION for any purpose other than evaluation of a potential agreement" with Walker.

23.     Paragraph 8 of the Confidentiality Agreement addresses the rights of the parties with respect to inventions made during the period of February 25, 2009, through October 1, 2009.  Specifically, that Paragraph states:

> During the term of this agreement, should [AMVAC] make any discovery, invention or improvement involving AMV 5065 provided by [Walker], [AMVAC] _must notify [Walker] in a timely manner_.

Ex. A, at ¶ 8 (emphasis added).

24.     If AMVAC notified Walker of any discoveries, inventions or improvements involving AMV 5065 made between February 27, 2009, and October 1, 2009 on a timely basis, the Confidentiality Agreement states that AMVAC "shall have the right to file applications for patents in its own name" with respect to the disclosed discovery, invention or improvement.

25.     Paragraph 8 of the Confidentiality Agreement provides that with respect to any "discovery, invention or improvement involving AMV 5065":

> [AMVAC] shall grant to [Walker], a non-exclusive, worldwide, license under any such discovery, invention or improvement, _whether patentable or not_, the terms of which are to be negotiated in good faith under a separate agreement.

5

Ex. A, at ¶ 8.

26.     Finally, AMVAC agreed to provide Walker with a summary of all test results involving ametryn and of its evaluations of AMV 5065 within sixty (60) days after completion of those tests.  Ex. A, at ¶ 9.

27.     In reliance upon the provisions of the Confidentiality Agreement, Walker furnished confidential, propriatary and otherwise secret information to AMVAC regarding the Ametryn Method.

28.     Walker otherwise complied in all respects with the terms of the Confidentiality Agreement.

29.     During the term of the Confidentiality Agreement, AMVAC did not notify Walker of any discovery, invention or improvement involving AMV5065 made by AMVAC in accordance with Paragraph 8.

30.     During the term of the Confidentiality Agreement, AMVAC did not:

  a.  Furnish to Walker a summary of its test results with the Materials; or

  b.  Furnish to Walker a summary of any of its evaluations of AMV 5065.

31.     On or about December 29, 2009, Walker and AMVAC entered into a Testing and Evaluation Agreement (the "Agreement").  A true, correct and complete copy of the Agreement is attached hereto and incorporated by reference herein as **<u>Exhibit B</u>**.

32.     The introductory paragraph of the Agreement states that the Effective Date is December 29, 2009, and Section 12 of the Agreement states that the Agreement terminates on December 31, 2010.  Ex. B., Introduction & § 12.

33.     Section 14 of the Agreement states:

Further, the parties hereto agree to the confidentiality provisions of the [Confidentiality Agreement], which is incorporated by reference herein.

Ex. B, § 14.

34.     Section 15 of the Agreement states:

This Agreement, taken with the Confidentiality Agreement, constitutes the entire agreement between the parties with respect to the subject matter hereof.

Ex. B, § 15.

35.     The recitals of the of the Agreement acknowledge the Confidentiality Agreement, the fact that Walker is providing information about ametryn to AMVAC pursuant to that agreement, the fact that Walker already owns the '909 Patent and that AMVAC "is interested in evaluating ametryn to determine whether it might have business potential in AMVAC's portfolio."

36.     Section 2 of the Agreement then limits the individuals who may use ametryn to "individuals working under AMVAC's direction, *who agree in writing to be bound by this Agreement*." Ex. B, § 2 (emphasis added).

37.     In consideration for AMVAC's agreements in Section 2, in Section 3 of the Agreement, Walker grants AMVAC:

[A] nonsublicensable, exclusive, nontransferable, royalty-free license to the [Ametryn Method] solely for the purpose of developing, testing and evaluating [ametryn] as a pre-emergent herbicide for agricultural applications within the territory of the United States *for a term coextensive with the term of the Agreement*.

Ex. B, § 3.

38.     Thus, Section 3 of the Agreement specifies that the license with respect to the Ametryn Method expires on December 31, 2010.  Ex. B, §§ 3, 12.

39.     The Agreement further states that "[t]he license granted herein shall be restricted to AMVAC's internal use only."  Ex. B, § 5.

40.     Section 7 of the Agreement addresses the question of inventions and other improvements made by AMVAC personnel during the term of the Agreement.  Specifically, that section states:

> The Parties agree that any inventions, improvements, divisions, continuations, continuations-in-part, patents, patentable products, by-products, and reissues of any patents in and to the claims set forth in the PATENT created or invented or discovered by or through AMVAC or any person working with AMVAC shall be the property of AMVAC, shall be part of AMVAC's rights, and shall be assigned to AMVAC utilizing an assignment form acceptable to AMVAC.

Ex. B, § 7.

41.     Section 7 is limited to inventions created between the effective date of the Agreement [December 29, 2009] and the expiration date of the Agreement [December 31, 2010].  Ex. B, Introduction & § 12.

42.     During the term, Section 10 allows AMVAC to use the research results in support of any patent applications pending on December 29, 2009, or any applications filed prior to December 31, 2010.  Ex. B, § 10.

43.     Section 9 of the Agreement contains AMVAC's acknowledgement that the limited license it receives is the sole rights it possesses with respect to the Ametryn Method or the use of ametryn as a preemergent herbicide for crops.  Specifically, Section 9 states:

> [N]o express or implied licenses or other rights are provided to AMVAC under any patents, patent applications, trade secrets or other proprietary rights.

Ex. B, § 9.

44.     Finally, Section 12 of the Agreement acknowledges that the parties "may agree to extend the term of the Agreement for an addition period of up to thirty-six months (the "Extension Period")"  Ex. B, § 12.

45.     Neither AMVAC nor Walker agreed to extend the Agreement.

46.     Consequently, the Agreement expired by its terms on December 31, 2010.

47.     In reliance upon the provisions of the Confidentiality Agreement and the Agreement, Walker furnished confidential and otherwise secret information to AMVAC regarding the Ametryn Method.

48.     Walker otherwise complied in all respects with the terms of the Agreement.

49.     During the term of the Agreement, AMVAC did not notify Walker of any discovery, invention or improvement involving AMV5065 made by AMVAC.

50.     During the term of the Agreement, AMVAC did not:

  a.  Furnish to Walker a summary of its test results with the Materials; or

  b.  Furnish to Walker a summary of any of its evaluations of AMV 5065.

51.     After the Agreement expired, AMVAC continued to be bound by the confidentiality terms set forth in the Confidentiality Agreement.   Ex. B, § 14.   Those confidentiality provisions did not expire until October 1, 2014.

52.     On March 3, 2010, Walker filed Patent Application 12/716,975 (the "'975 Application") with the United States Patent and Trademark Office (the "USPTO").

53.     The '975 Application incorporates the Ametryn Method owned by Walker in each of its 20 claims.

54.     The USPTO published the '975 Application on September 8, 2011.

55.     On November 8, 2011, AMVAC filed Patent Application 61/557,277 (the "'277 Application") with the USPTO as the assignee of an invention by three AMVAC employees -- William B. O'Neal, Richard Porter, and Peter J. Porpiglia.

56.     On November 9, 2012, AMVAC filed Patent Application 13/672,629 (the "'629 Application") as the assignee of an invention by the same three AMVAC employees -- William B. O'Neal, Richard Porter, and Peter J. Porpiglia -- that took the priority of the '277 Application.

57.     Both the '277 Application and the '629 Application filed by AMVAC incorporate and make use of the Ametryn Method. In particular, Claims 1, 2, 3, 4, 6, 7, 12, 19, 21, 22, and 24 of the '277 Application make use of and incorporate the Ametryn Method.

58.     Claims 1, 2, 3, 4, 6, 12, 19, 21, 22, and 24 of the '277 Application are substantially the same as claims described in the '975 Application filed by Walker.

59.     On May 9, 2013, the USPTO published the '277 Application.

60.     On December 30, 2014, the USPTO issued Patent Number 8,921,270 (previously defined as the '270 Patent, now called the "Patent") to AMVAC, covering the claims described in the '277 Application.

61.     At no time did Walker assign his inventorship interest in the Ametryn Method to AMVAC, O'Neal, Porter, or Porpiglia.

62.     Any error in not listing Walker as the sole inventor of the inventions claimed in the Patent arose without any deceptive intent by Walker.

63.     Walker owns any and all personal interest in the Ametryn Method and the claims described in the Patent incorporating and making use of the Ametryn Method.

64.     Walker's rights to the Ametryn Method were fraudulently taken from him, and he was denied the benefits that should have accrued to him.

65.     Specifically, under the terms of the Confidentiality Agreement, AMVAC was under a contractual obligation to notify Walker of any invention involving the use of ametryn or the Ametryn Method developed during the term of that agreement.  Likewise, under the terms of the Agreement, AMVAC was under a duty and obligation to notify Walker of any invention involving the use of ametryn or the Ametryn Method.

66.     AMVAC did not notify Walker of any such invention.

67.     The claims set forth in the '270 Patent issued to AMVAC, represent discoveries, inventions or improvements involving AMV 5065 for which Walker is entitled to a "world-wide license" pursuant to Paragraph 8 of the Confidentiality Agreement.

## COUNT I

### Breach of Contract

68.     Walker incorporates the allegations contained in Paragraphs 1 through 67 of this Complaint.

69.     The Agreement incorporating the Confidentiality Agreement, constitutes a valid and enforceable contract between AMVAC and Walker.

70.     Under the terms of the Agreement, AMVAC was prohibited from using or disclosing any information with respect to the Ametryn Method or the use of the ametryn compound as a preemergent herbicide through and including October 1, 2014.

71.     Notwithstanding the terms of the Agreement, AMVAC filed and prosecuted the'277 Application and the '629 Application which incorporate the Ametryn Method or the use of the ametryn compound as a preemergent herbicide, with the USPTO prior to October 1, 2014.

72.     The filing and prosecution by AMVAC of the '277 Application and the '629 Application breached the express terms of the Agreement.

73.     Further, the publication of the '629 Application on May 9, 2013, by the USPTO constituted a breach of the express terms of the Agreement.

74.     Walker has sent several demands to AMVAC seeking to resolve these claims through good faith negotiations as required by the Confidentiality Agreement.  AMVAC refuses to engage in those negotiations notwithstanding the express terms of the Confidentiality Agreement.

75.     As a result of AMVAC's breach of the Agreement, Walker has incurred damages, including consequential and incidental damages, in an amount to be determined at trial of not less than EIGHT MILLION AND NO/100 DOLLARS ($8,000,000.00).

WHEREFORE, PREMISES CONSIDERED, Walker respectfully requests this Honorable Court to enter judgment against AMVAC in favor of Walker for compensatory damages to be determined by the finder of fact in an amount of not less than EIGHT MILLION AND NO/100 DOLLARS ($8,000,000.00), plus costs of this action.

## COUNT II
### Correction of Inventorship

76.     Walker incorporates and restates the allegations of Paragraphs 1 through 75 of this Complaint.

77.     The inventorship of United States Patent 8,921,270 is incorrect because through omission, inadvertence, or error, Walker is not listed as the inventor on the patent.

78.     Walker made all of the conceptual contributions and reduction to practice of the claims asserted as claims 1, 2, 3, 4, 6, 7, 12, 19, 21, 22, and 24 of United States Patent 8,921,270.

79.     The omission of Walker as the inventor on these claims occurred without any deceptive intent on Walker's part.

80.     All parties concerned with the inventorship of these claims have been put on notice or will be put on notice pursuant to filing and service of this Complaint.

81.     The Agreement specifically contemplated that except for inventions discovered during the period of December 29, 2009 and December 31, 2010, and disclosed by AMVAC to Walker during that period, Walker retained all rights with respect to the Ametryn Method and the inventions associated with the Ametryn Method.  In fact, the Agreement specifically limits the license to AMVAC to use the Ametryn Method and the '909 Patent to a term that ended on December 31, 2010.

WHEREFORE, PREMISES CONSIDERED, Walker respectfully requests this Honorable Court enter judgment declaring that Walker is an inventor of claims 1, 2, 3, 4, 6, 7, 12, 19, 21, 22, and 24 of United States Patent 8,921,270, and enter an order to the Director of the United States Patent and Trademark Office to correct inventorship of this Patent.

## COUNT III

### Accounting

82.     Walker incorporates the allegations contained in Paragraphs 1 through 80 of this Complaint.

83.     Upon information and belief, AMVAC has received substantial revenues with respect to the Ametryn Method and the other rights owned by Walker with respect to the use of ametryn as a preemergent herbicide.

84.     AMVAC obtained those revenues in violation of the terms of the Confidentiality Agreement.

85.     Walker is entitled to an accounting of those revenues from AMVAC.

WHEREFORE, PREMISES CONSIDERED, Walker respectfully requests this Honorable Court to order AMVAC to provide a full and complete accounting of revenues derived from the use of the Ametryn Method or the use of Ametryn as a preemergent herbicide.

## COUNT IV
### Specific Performance

86.    Walker incorporates the allegations contained in Paragraphs 1 through 85 of this Complaint.

87.    Paragraph 8 of the Confidentiality Agreement states that if AMVAC properly discloses any discovery, invention, or improvement involving AMV 5065, Walker is entitled to a "non-exclusive, worldwide license" to that discovery, invention or improvement "whether or not patentable."

88.    Claims 1, 2, 3, 4, 6, 7, 12, 19, 21, 22, and 24 of United States Patent 8,921,270, represent "any discovery, invention, or improvement involving AMV 5065"  as set forth in the Confidentiality Agreement.

89.    Walker is entitled to a royalty-free, "non-exclusive, worldwide license" for United States Patent 8,921,270 and any other discoveries, inventions or improvements involving AMV 5065 made by AMVAC or its agents or employees.

90.    AMVAC, in violating the terms of the Confidentiality Agreement, acted intentionally, maliciously or in reckless disregard for the rights of Walker.

91.    WHEREFORE, PREMISES CONSIDERED, Walker respectfully requests this Honorable Court to order AMVAC to grant a royalty-free, "non-exclusive, world-wide license" for United States Patent 8,921,270 and any other discoveries, inventions or improvements involving AMV 5065 made by AMVAC or its agents or employees.

## PRAYERS FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED**, the Plaintiff, **LARRY L. WALKER**, prays:

1.     That this Complaint be served upon the Defendant, AMVAC Chemical Corporation, requiring it to answer within the time and manner required by law;

2.     That this Court empanel a jury of twelve to make findings of fact in this matter.

3.     That, after a trial on the merits, this Court enter a judgment against the Defendant, AMVAC Chemical Corporation, in an amount of not less than EIGHT MILLION DOLLARS ($8,000,000), plus costs of this action.

4.     That, after a trial on the merits, this Court enter judgment declaring that the Plaintiff, Larry L. Walker is an inventor of claims 1, 2, 3, 4, 6, 7, 12, 19, 21, 22, and 24 of United States Patent 8,921,270, and enter an order directing the Director of the United States Patent and Trademark Office to correct inventorship of this Patent.

5.     That this Court order the Defendant to provide a full and complete accounting of revenues derived from the use of the Ametryn Method or the use of Ametryn as a preemergent herbicide and that the Court order the Defendant to deliver to the Plaintiff those revenues generated by the Ametryn Method or the use of Ametryn.

6.     That this Court order AMVAC to grant a royalty-free, "non-exclusive, world-wide license" for United States Patent 8,921,270 and any other discoveries, inventions or improvements involving AMV 5065 made by AMVAC or its agents or employees.

7.     That this Court grant such other further and general relief as to which the Plaintiff, Larry L. Walker, may be entitled.

**<u>Demand for a Trial by Jury</u>**

Plaintiff hereby demands a trial by jury of twelve (12) on all issues so triable.

Dated:  March 27, 2017.

Respectfully submitted,

**FARRIS BOBANGO, PLC**

By:      */Keith C. Dennen*
   Keith C. Dennen, #12618

   414 Union Street, Suite 1105
   Nashville, Tennessee  37219
   Telephone:  615.726.0012
   Facsimile:  615.726.1776
   E-mail:  kdennen@farris-law.com

*Attorneys for the Plaintiff, Larry L. Walker*